HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| O.A. and F.Q., | CASE NO. 2:26-cv-00195-RAJ |
| Petitioners, | ORDER |
| v. | |
| LAURA HERMOSILLO, *et al.*, | |
| Respondents. | |

## I.      INTRODUCTION

THIS MATTER comes before the Court on Petitioners O.A. and F.Q.'s Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record.  For the reasons set forth below, the Court **GRANTS** the petition.

ORDER – 1

## II.    BACKGROUND

Petitioners O.A. and F.Q. [1] are cousins from Afghanistan who fled after the Taliban took control of the country's capital, Kabul.  Dkt. # 1 ¶ 24.  Petitioners' immediate and extended family members worked for and in support of the United States and its allies, which places Petitioners in grave danger now that the Taliban has returned to power.  *Id.*  Before Petitioners fled Afghanistan, the Taliban killed F.Q.'s father.  Dkt. # 14 ¶ 3.  They also wrecked O.A's house and physically assaulted him.  Dkt. # 15 ¶ 4.

O.A. entered the United States on October 16, 2023 via the southern border.  Dkt. # 10 ¶ 4.  Immigration officials apprehended O.A. shortly after entry, and released him on October 17, 2023 on an order of recognizance ("OREC").  *Id.* ¶ 5; Dkt. # 1 ¶ 26.  After his release, O.A. applied for asylum and other relief.  Dkt. # 10 ¶ 7.  He attended regular check-ins with Immigration and Customs Enforcement ("ICE") and states he is unaware of any missed check-ins or OREC violations.  Dkt. # 15 ¶¶ 7–8, 11.  On December 15, 2025, O.A. was detained without notice and hearing and transported to the Northwest Immigration Processing Center ("NWIPC").  Dkt. # 10 ¶ 11; Dkt. # 1 ¶¶ 28, 30.

F.Q. entered the United States on November 20, 2023 via the southern border.  Dkt. # 10 ¶ 14.  Immigration officials apprehended F.Q. shortly after entry, and released him on November 22, 2023 on an OREC.  *Id.* ¶ 15; Dkt. # 1 ¶ 26.  After his release, F.Q. applied for asylum and other relief.  Dkt. # 10 ¶ 18.  Respondents state F.Q. missed certain check-ins, checked in "outside his permitted zone," and failed to update his address.  *Id.* ¶¶ 21–25.  F.Q. states he is unaware of any missed check-ins and "always checked in from [his] home," so he does not understand the allegation that he checked in "outside his permitted zone."  Dkt. # 14 ¶ 9.  On December 25, 2025, ICE officers arrived at F.Q.'s home to arrest

---

[1] Petitioners seek leave to proceed anonymously due to risk of harm based on their status as asylum seekers.  Dkt. # 1 at 2.  Respondents do not oppose the request.  *See generally* Dkt. # 9.  "Courts in this Circuit have regularly granted plaintiffs leave to file pseudonymously in cases relating to asylum proceedings."  *E.N. v. Mayorkas*, No. 24-cv-1920, 2024 WL 5711434, at *1 (W.D. Wash. Dec. 3, 2024); *see Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  Accordingly, the Court grants Petitioners' request.

him.  *Id.* ¶ 12; Dkt. # 10 ¶ 25.  Although F.Q. was not home at the time, he drove home to turn himself in.  Dkt. # 14 ¶ 12.  ICE officers handcuffed F.Q. in his car before he could turn off the motor.  *Id.*  They transported him to NWIPC where he remains today.  Dkt. # 10 ¶ 25.

## III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  The district courts' habeas jurisdiction includes challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The petitioner bears the burden of proof by a preponderance of the evidence.  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV.  DISCUSSION

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands."  *Id.* at 334 (quoting *Morrissey v.* Brewer, 408 U.S. 471, 481 (1972)).  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.  In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context.  *Id.* at 1207.  District courts have subsequently applied the *Mathews* test in this manner.  *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

As an initial matter, the Court notes that Respondents' return contains no argument that Petitioners' re-detention comports with due process.[2]  The Court will nevertheless address the *Mathews* factors.

Under the first *Mathews* factor, Petitioners have a strong interest in not being detained.  The "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects.").  "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).  "Recently, courts throughout the Ninth Circuit have concluded that non-citizens who are released from ICE custody have a protected liberty interest under the Due Process Clause in remaining out of custody while their cases proceed."  *Kumar*, 2025 WL 2677089, at *3 & n.3 (collecting cases).

Under the second *Mathews* factor, the procedures used to re-detain Petitioners created a high risk of an erroneous deprivation of liberty interests, and there is probable

---

[2] The return does not contain an argument section.  The conclusion merely states "ICE detains OA and FQ pursuant to § 1225(b)(2)." Dkt. # 9 at 7.  "To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected." *P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025).

ORDER – 4

value in additional safeguards. Petitioners' re-detention appears arbitrary. *See Kumar*, 2025 WL 2677089, at *3 (finding second *Mathews* factor favored petitioner because his re-detention appeared arbitrary). Petitioners were released on an OREC in October and November 2023 and lived in the community for more than two years without incident. Dkt. # 10 ¶¶ 5, 15. They both have pending applications for asylum and other relief and state they attended regular check-ins with ICE. *Id.* ¶¶ 7, 18; Dkt. # 14 ¶¶ 9–10; Dkt. # 15 ¶ 11. There is no evidence in the record that either Petitioner committed any crimes or is otherwise a danger to the community. Yet in December 2025, ICE re-detained Petitioners without notice and hearing. Dkt. # 10 ¶¶ 11, 25.

Respondents provide no reason for O.A.'s re-detention. *See id.* ¶ 11. They state they re-detained F.Q. due to missed check-ins, check-ins "outside his permitted zone," and failure to update his address with ICE. *Id.* ¶¶ 21–25. F.Q. disputes this. Dkt. # 14 ¶ 9. In any case, the alleged missed check-ins and improper check-ins occurred months before F.Q.'s re-detention, raising serious questions about whether they necessitated re-detention without procedural safeguards. *See A.C.J. v. Hermosillo*, No. 25-cv-2486, 2026 WL 73857, at *5 (W.D. Wash. Jan. 9, 2026) ("the question of whether Petitioner's alleged missed check-ins constitute a sufficiently changed circumstance is a matter for a *pre-deprivation hearing.*") (emphasis in original). Moreover, the allegation regarding F.Q. failing to update his address appears incorrect. Respondents' own declaration states that F.Q. updated his address in April 2025, and that ICE officers ultimately arrested F.Q. at the address on record. Dkt. # 10 ¶¶ 20, 25. Additional safeguards, including notice and a meaningful opportunity to be heard before an immigration court, may have decreased the risk of arbitrary or otherwise unlawful detention.

Finally, under the third *Mathews* factor, the government's interest in re-detaining Petitioners without additional procedures is low. Respondents do not argue Petitioners posed a flight risk, danger to the community, or otherwise required immediate re-detention without procedural safeguards. They also do not argue that additional procedures would

ORDER – 5

have imposed an unreasonable burden on the government.  In short, they identify no interest that justifies detaining Petitioners without a pre-deprivation hearing.

Accordingly, the Court finds that all three *Mathews* factors support a finding that Petitioners' re-detention violates procedural due process and requires immediate release.

## V.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioners' Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court **ORDERS** that Respondents:

(1)    Shall immediately release O.A. and F.Q. from custody;

(2)    Shall file with the Court a notice within 2 business days confirming O.A. and F.Q.'s release; and

(3)    Shall not re-detain O.A. or F.Q. unless and until providing them with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Petitioners may file a fee petition within the deadlines set by the Equal Access to Justice Act.  The parties must comply with the Court's meet and confer requirements prior to filing, and the Court takes no position at this time regarding whether such fee petition will be granted.

Dated this 13th day of February, 2026.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 6